S. B. WILLOCK, Respondent, v. MISSOURI PACIFIC
RAILWAY COMPANY, Appellant.

### Kansas City Court of Appeals, February 20, 1899.

Common Carriers : NEGLIGENCE: STOPPAGE IN TRANSITU. Where the
carrier has the shipper who desires to stop goods *in transitu*, enter
into an indemnifying bond and refuses to allow him to send a dis-
patch over the public telegraph and undertakes to send the same
over its own private wire and then negligently delays the sending of
the dispatch so that the goods are delivered to the consignee, it can
not set up that the goods were beyond its line at the time, or its
ignorance of whose charge the goods were then in, and is liable for
loss occurring by reason of its negligence.  The giving and refusing
of instructions considered and approved.

*Appeal from the Jackson Circuit Court.*—HON. E. P.
GATES, Judge.

AFFIRMED.

J. L. LORIE, STUART CARKENER and ELIJAH ROBINSON for
appellant.

(1)   The rule of law, sustained by authority and reason,
is that a notice of stoppage *in transitu* to be effectual, must
be given to the party in the immediate custody or control of
the property. Wood on Railways, p. 350; Hutchinson on Car-
riers, p. 337; Poole v. Railway , 9 A. & E. Case, p. 197.   (2)
Instruction number 2, asked by defendant, should have been
given.  See authorities *supra*.  (3)   The court erred in
changing defendant's instruction number 4.  It could not
have identified the goods by wiring to New York.   It did
not know in whose possession the goods were.   If defendant
notified the party to whom it delivered the goods (not knowing
into what other hands they had passed) in time to enable that

party to have stopped the delivery, then it did all the law would require, and plaintiff must look to the other party.

HATCH & MIDDLEBROOK for respondent.

(1) The property was in the control and custody of the Missouri Pacific Railway Company. The refrigerator company's cars were used simply to keep the eggs cool. The evidence clearly shows this. There is nothing in point I of defendant's brief. (2) The giving of the bond was a fact proper to be considered by the jury. It shows that the company considered itself the custodian of the eggs and in control of them. (3) Lastly, all attempts to shift the negligence must fail, because the negligence occurred right here in Kansas City in consuming four or five valuable hours before sending the telegram. This was what really defeated the defendant in both the lower courts, and if by any technical ruling this cause is reversed and remanded, this negligence will always defeat the defendant.

ELLISON, J.—Plaintiff is the consignor of freight and defendant is the carrier. The action is for negligent failure to stop the property *in transitu*. The judgment in the trial court was for plaintiff.

It appears that plaintiff desiring to ship several cases of eggs from Kansas City, Missouri, to Joseph Graham & Company, at New York, did so ship them on August 14 and 15, 1895, over defendant's road, care of the "A. STATEMENT. R. T. Co." which is the American Refrigerator Transit Company. The terminus of the defendant's road is St. Louis, Missouri. The goods arrived at destination and were delivered to Graham & Company at ten minutes of four o'clock on the afternoon of the twentieth of August. On the nineteenth, plaintiff learned that Graham & Company were insolvent and wishing to stop the goods· *in transitu,* went to defendant's freight office in Kansas City and

notified it of his desire, directing a delivery to S. M. Barber and that it was necessary that it be done immediately. This was at one o'clock in the afternoon or a few minutes later. After some delay by defendant's officials they finally undertook to stop the goods, wrote out a telegram to the defendant's agent at St. Louis, directing change of consignee from Graham & Company to S. M. Barber and stating that: "If unable to change all the shipts. pls. change as many as possible and rush the matter through, advising result." Before consenting to send this telegram defendant's agent required plaintiff to execute to it an indemnifying bond which he immediately did. About one hour of time was spent in getting that far with the business. Plaintiff offering, in the meantime, to send a message himself over the Western Union wire to the proper place in New York, and taking responsibility of its getting there in time, if defendant would allow him the use of its name, and his offer was declined, the agent stating it was preferred to use defendant's own wire. Plaintiff was told that the message would be sent immediately and he left the office at 2 o'clock. The message was not sent until within a few minutes of 6 o'clock. It was received at St. Louis immediately after but was not delivered to the proper place for communication with connecting carriers to stop the goods until fifteen minutes after 8 o'clock next morning.

It thus appears that defendant, after having written the dispatch and taking the delivery bond from plaintiff, had from 2 o'clock p. m. of the nineteenth to near 4 o'clock p. m. of the twentieth (the time the goods were delivered to the insolvent consignee) in which to get a telegram, stopping the goods, to point of destination or into the hands of whichever carrier might then have had them in charge at that time. The question of negligent delay on part of defendant in sending the telegram and whether it caused failure to stop the goods were properly submitted to the jury by instructions.

The defendant had several instructions refused by the court. The first, after a demurrer, was that if the goods were beyond the terminus of defendant's road when it was notified of a desire to change consignee, plaintiff could not recover. It is enough to say of this that it ignores the evidence showing that defendant nevertheless did undertake to stop them and had plaintiff enter into an indemnifying bond and refused to allow him to immediately forward its dispatch over the Western Union wire. The second instruction was to the effect that if defendant did not know and had no means of knowing in whose charge the goods were when plaintiff notified it to change the consignee and that it had no means of identifying the goods, then it was not negligence to fail to send a telegram to New York from Kansas City. This instruction ignored the undisputed testimony that plaintiff offered to accept the responsibility of stopping the goods if they would send a dispatch to New York as he requested; he, himself, having ascertained the proper place to be addressed. It is not meant to say that defendant was bound to follow the offer of plaintiff, but if it refused to do so and insisted on the use of its own line, it ought not to be allowed afterwards to single out that specific part of the case and have the jury told that it constituted no ground of recovery. The next instruction was amended by the court and given. As asked by defendant it absolved defendant from liability if it used reasonable diligence in communicating plaintiff's order to the next connecting carrier. The court erased the words, "next connecting carrier" and inserted the proper person or office in New York City by whom, or at which the eggs might have been stopped. The amendment was proper under the evidence in the case. What we have already said disposes of refused instruction number five and leaves only the demurrer to the evidence which defendant contends should have been given. There is no merit in this contention. The case made

COMMON carriers: negligence: stoppage in transitu.

by plaintiff certainly justified his recovery. He notified defendant's agents more than twenty-four hours before the goods were delivered in New York. He furnished them with the address at the place of consignment where the goods could have been stopped. He told them to be quick or he would lose his property and offered to take the risk of stopping it if they would allow him to send the dispatch over the Western Union wire. But they refused, hesitated and delayed. They held the dispatch in Kansas City for several hours. They then sent it to St. Louis too late for action there, where it was held till next morning, the evidence failing to show that it or any other communication ever reached New York. The verdict was evidently for the right party and the judgment will be affirmed. All concur.